Alfred BROUGH, Appellant,

v.

STRATHMANN SUPPLY CO., Inc.,

and

MERMAID POOLS, INC., Third-Party Defendant.

No. 15426.

United States Court of Appeals Third Circuit.

Argued Dec. 17, 1965.

Decided March 29, 1966.

Jerome J. Verlin, Philadelphia, Pa. (David Cohen, Arthur M. Dolin, Philadelphia, Pa., on the brief), for appellant.

Joseph G. Manta, Philadelphia, Pa. (James M. Marsh, Philadelphia, Pa., LaBrum & Doak, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this personal injury negligence action at the end of plaintiff's case, on motion of the defense, a directed verdict was granted against the plaintiff and in favor of the defendant. The verdict was primarily based on the finding of no diversity of citizenship between the parties but the court also held that the amount in controversy did not exceed $10,000; that there was contributory negligence as a matter of law against plaintiff and that the latter had not presented prima facie proofs of negligence against the defendant.

The plaintiff, Alfred Brough, was a minor of the age of nineteen at the time the injury occurred. It was sustained by him as a result of the defendant's alleged negligence, on September 28, 1959 when plaintiff was working for the third party defendant in the construction of a private swimming pool at Holland, Pennsyl-

vania. On that date, and up to the present, the plaintiff and the defendant were and are Pennsylvania residents. On September 6, 1961, Alvin H. Frankel, a New Jersey resident, was appointed guardian of Alfred Brough's estate by the Orphan's Court as Brough was still a minor. It was Frankel who brought the suit in the Federal District Court in his own name pursuant to 28 U.S.C.A. Federal Rules of Civil Procedure, rule 17(a) for the benefit of his minor ward who at the time was not made a party to the action.

At pretrial on December 15, 1964, plaintiff's attorney moved to amend the caption of the complaint to remove the guardian as plaintiff and substitute Alfred Brough in his own right as plaintiff. At this point the Court asked defense counsel whether he had any objection and the answer was "No". The motion was granted from the bench. A suggestion of plaintiff's majority was filed later. At the trial Brough was substituted in the title caption as plaintiff.

### I. DIVERSITY

On the question of diversity the trial judge held that at the commencement of the action there was diversity since the guardian was a New Jersey resident and defendant was a Pennsylvania resident, but the removal of the guardian as plaintiff and replacing him with Brough as plaintiff resulted in a loss of diversity and therefore the court had no jurisdiction.

It is appellee's contention that the court was correct in this ruling because in effect what appellant accomplished was an amendment as opposed to a substitution and that since it was an amendment the court must look to the new parties to determine whether or not there is diversity. To support this proposition the appellee cites the case of Grady v. Irvine, 254 F.2d 224 (4 Cir. 1958). That case is readily distinguished from this suit because what was attempted there was an amendment which would change the nature of the action from one for personal injuries to a claim for

wrongful death. The two are fundamentally different with different measures of damages. The Grady court held that since, not merely a new plaintiff had been introduced but also a new and distinct cause of action, the citizenship of the new plaintiff would determine diversity. That same opinion, however, recognized a distinction which is most relevant to this appeal when it stated, "For purposes of federal jurisdiction, the requirement of diversity of citizenship is ordinarily determined by the situation existing at the time the action is commenced. Once federal jurisdiction has attached, it is not defeated by a subsequent change in the citizenship of one of the parties, Mollan [Mullen] v. Torrance, 9 Wheat. 537, 6 L.Ed. 154, nor by a formal substitution of a personal representative of nondiverse citizenship for an original party who dies while the cause is pending. Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205." Supra, 254 F.2d p. 226. Appellee cites as further authority, Schwartz v. Metropolitan Life Insurance Co., 2 F.R.D. 167 (D.C., 1941). The case is inapposite for the same reasons as Grady v. Irvine, supra. It concerns an attempt made by a guardian, suing as representative of an insane ward, to introduce a personal action against defendant by means of substitution or, in the alternative, an amendment. The court held that Rule 25 did not provide for such substitution and that Rule 15(a) did not apply because a new cause of action was being brought in which the ward's beneficial interest was not involved. Here, at all times the suit has been on behalf of Alfred Brough, the exact same claim, both when the guardian was suing and when Brough himself became plaintiff.

■ Appellee argues that a new cause of action has been set up because the plaintiff is now attempting to recover for his medical expenses whereas the guardian could not have done so. That item was disposed of by the trial judge who refused to permit plaintiff to introduce evidence as to what the expenses

were. The judge considered himself bound by Pennsylvania law which he felt placed that claim in the parents of the injured minor under the decision of In re Mikasinovich, 110 Pa.Super. 252, 261, 168 A. 506 (1933). The count for medical expenses never actually entered the cause at all.

The situation closest to the essence of our diversity problem is found in Allegheny Corp. v. Kirby, 218 F.Supp. 164 (D.C.N.Y.1963), affd. 333 F.2d 327 (2 Cir. 1964). A derivative suit was started by certain stockholders of a New York corporation against certain directors of the corporation and others. Some of the defendants were citizens of New York and the plaintiff stockholders were citizens of another state. At that point there was complete diversity of citizenship, just as in this appeal when the guardian commenced this suit. Subsequently, on motion of the plaintiffs, they were dropped as parties plaintiff and the corporation substituted as plaintiff in their stead. The defendants then moved to have the litigation dismissed on the grounds that there was no longer diversity of citizenship, since the corporation's principal place of business was in New York. The court denied the motion stating, "Once jurisdiction has been acquired a subsequent change of parties does not remove such jurisdiction." Supra, 218 F.Supp. at p. 170. In Allegheny just as in the instant appeal it is not quite clear whether there was a substitution or an amendment. The court in Allegheny uses the term "substitution" but the federal rule authorizes substitution only in four instances, i. e. death of a party, incompetency, transfer of interest; death or separation from office of a public official. F.R.C.P. 25.

■ In any event, it makes little difference what terminology is used. The determining factor is the effect of the change of parties plaintiff on the nature of the action. The nature of this action has remained the same and therefore diversity is to be determined as of the time of the commencement of the suit.

## II. Amount in Controversy

From the record, it appears that the physical injury sustained by the plaintiff is the loss of the distal phalanx of the middle finger of the right hand. Originally it was crushed by the tailgate of defendant's truck. Subsequently gangrene set in and after three separate surgical procedures the entire phalanx was amputated. For this plaintiff is seeking damages for pain and suffering, loss of income, permanent injuries, damages to his future earning power and medical expenses. With the exception of medical expenses, there is competent testimony in the record to sustain plaintiff's claim for all of his elements of damage. The trial judge made a finding that the amount in controversy did not exceed $10,000 as required by 28 U.S.C.A. 1332(a).

■■ The settled rule of law to be applied in determining whether or not plaintiff's cause of action meets the jurisdictional amount is that so long as plaintiff is acting in good faith in his allegation of jurisdictional amount and it does not appear to a "legal certainty" that his claim is actually for less than the jurisdictional amount, the court will have jurisdiction. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); McDonald v. Patton, 240 F.2d 424, 426 (4 Cir. 1957); 2 Moore's Federal Practice § 8.11. There is no trial evidence which would impugn the plaintiff's good faith. Even excluding the claim for medical expenses, it cannot fairly be said that it "appears to a legal certainty" that plaintiff's damages do not exceed $10,000. So, while there could be possibly some doubt raised as to the monetary value of plaintiff's damages, under the facts the only just and proper thing to do is to submit the question to the jury for there is not that necessary legal certainty present in order to rule against jurisdiction on that ground.

## III. Negligence and Contributory Negligence

■ On the issues of negligence and contributory negligence which were also disposed of by the directed verdict in the trial court, this court in its review must view all of the evidence in a light most favorable to the plaintiff, as well as all reasonable inferences which may be drawn therefrom. Viking Theatre Corp. v. Paramount Film Distributing Corp., 320 F.2d 285, 288 (3 Cir. 1963); affd. 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743.

The defendant's truck had just delivered a load of sand to the pool site. Most of the sand had fallen free of the truck when the latter's dump portion had been raised and the bottom of the tailgate unlocked. Plaintiff had been building similar pools for two years prior to this time. In accordance with his practice on that and practically every job site he had worked, as he testified, he approached the rear of the truck in order to slam the tailgate. The purpose of that was to loosen any damp sand which had clung to the bottom of the truck. Brough's employer was certainly paying for the full load. And as Brough said " * * * if you are back there helping him [the driver], you grab in and loosen any sand that is in the back." While he was pulling the tailgate back to slam it he felt it lurch forward. It was at this moment his finger was smashed. A coemployee of Brough testified that at this particular moment, he saw the driver with his hand on the other end of the tailgate. A reasonable inference could be derived from those facts that the driver, without seeing plaintiff on the other side of the truck, slammed the tailgate on his finger.

■■ On the issue of contributory negligence, it is difficult to see how there could be such a finding as a matter of law under the testimony. Pursuant to the substantive doctrine of Pennsylvania " * * * contributory negligence as a matter of law should be declared only in a very clear case and only where the evidence of such is so clear and palpable that there is no room for fair and sensible men to differ in their conclusions as to its existence." Dougherty v. Philadelphia National Bank, 408 Pa. 342, 344, 184 A.2d 238, 239 (1962). See also

Rinard v. Y B H Sales and Service Co., 328 F.2d 959 (3 Cir. 1964). In view of all these circumstances the action of the trial court in granting a directed verdict on the issues of failure to present a prima facie cause of negligence against the defendant and of contributory negligence of plaintiff as a matter of law, at that stage of the trial, was error.

### IV. MEDICAL EXPENSES

■ Appellant urges that the Pennsylvania rule vesting the cause of action for medical expenses resulting from an injury sustained by a minor, in the parents of that minor should be limited in its application to unemancipated minors only. He cites no Pennsylvania authority to support his proposition. He founds his argument on the fact that the leading Pennsylvania opinion on the particular subject dealt with a " * * * minor living in the family relation with his father * * *." In re Mikasinovich, 110 Pa.Super. 252, 260, 168 A. 506 (1933). Few Pennsylvania decisions subsequent to Mikasinovich discuss the question. Those which do fail to make the distinction appellant seeks, e. g. Hamilton v. Civillico, 34 F.R.D. 1 (E.D.Pa. 1963); Johnstone v. O'Connor & Co., 164 F.Supp. 66 (E.D.Pa.1958); Schmidt v. Kratzer, 402 Pa. 630, 168 A.2d 585 (1961); Discovich v. Chestnut Ridge Trans. Co., 369 Pa. 228, 85 A.2d 122 (1952). Furthermore, the Pennsylvania Supreme Court has gone so far as to say that where a suit is brought for injuries to a minor plaintiff accompanied by a claim for medical expenses on behalf of the parent, the two causes of action are separate and distinct, so much so that separate appeals must be taken as to each. Dellacasse v. Floyd, 332 Pa. 218, 2 A.2d 860 (1939). The ruling of the trial court in this connection was sound and will not be disturbed.

The judgment of the District Court will be reversed and the case remanded to that Court for a new trial on the merits.